HERMIONE R. KETCHER, Plaintiff, *v.* FREDERICK J. LEWIS and Others, Defendants.

CHARLES E. LEWIS, Plaintiff, *v.* HERMIONE R. KETCHER and Another, Defendants.

Supreme Court, Sullivan County, November 19, 1937.

*Sidney L. Krakower,* for Hermione R. Ketcher and others.

*Edward F. Ryan,* for Frederick J. Lewis and others.

CO CHRANE (A. V. S.), Official Referee. For the sake of convenience I shall, having reference to both actions, speak of Miss Ketcher as plaintiff and Charles E. Lewis as defendant.

Both plaintiff and defendant claim title to the same land from one Lambert as their common source of title. Lambert owned a large tract of land and in the year 1854 sold therefrom to one Stinehart a portion described in the deed of conveyance as follows, viz.: " All that certain lot, piece or parcel of land situate in the Town of Lumberland aforesaid Being an undivided five (5) acres in the southeast corner of Lot Number Twenty-eight (No. 28) in the seventh division of the Minisink Patent." Said deed contained no other description or means of identification of the property conveyed. It is from this Stinehart deed that plaintiff claims to have derived her title to the disputed area.

Lambert executed a number of conveyances describing the property in the same indefinite and unascertainable manner as in the Stinehart deed, and in the year 1860 instituted an action to definitely settle and adjust the various conflicting and uncertain claims of ownership. His different grantees, including Stinehart, were made parties to this action. The complaint, a copy of which with the summons was served on Stinehart, contained the following and only allegation as to his ownership, viz.: " That the defendant, Lawrence Stinehart, is seized in fee simple and entitled to Three acres in said lot." Commissioners were appointed in the action, who, with the aid of a surveyor, divided the tract, or a portion thereof, into subdivisions and allotted the same to different parties to the action. Subdivision 1, containing two and one-half acres, and described by metes and bounds, was allotted to one Snyder.

Subdivision 2, containing three acres, and described by metes and bounds, was allotted to Stinehart. Subdivision 3, described by metes and bounds, was allotted to said Lambert. Judgment was entered in 1862 confirming the report of said commissioners.

The defendant Charles E. Lewis has an unbroken chain of title back to said subdivision 3, which was allotted to Lambert. Plaintiff succeeds to subdivision 1, allotted to Snyder, and apparently succeeds to subdivision 2, being the three acres allotted to Stinehart, although there is a gap of twenty-one years between the judgment in the Lambert action in 1862 and the next recorded conveyance in 1883 of the Stinehart property from one Keesler to one Fustle. How Ketcher became the owner is entirely a matter of conjecture. No conveyance from Stinehart is on record. I shall assume, however, for the sake of argument, that in some way Keesler had acquired the right to transfer the Stinehart title.

The judgment in the Lambert action was conclusive on Stinehart and his successors in interest, including plaintiff. The effort of plaintiff in this action is to take from that part of said subdivision 3 allotted to Lambert, which is now owned by defendant, two acres, being the difference between the five acres mentioned in the Lambert deed to Stinehart and three acres allotted to Stinehart in said action and by the judgment therein. This effort is clearly untenable. As stated, the judgment of the Supreme Court is conclusive. Stinehart himself was satisfied to get his three acres definitely set apart and located, or at least he made no complaint in the Lambert action, which was the proper place to make complaint if he had any to make. Nor was Keesler apparently under any misapprehension, because in his deed to Fustle, in describing the property, he used the same description as contained in the Lambert deed to Stinehart, except that he refrained from stating the acreage, which in the Stinehart deed was stated to be five acres. And none of his successors in interest should have been misled as to what they were buying, because the records have at all times since the year 1862 disclosed the exact condition of the title.

The record title of defendant to the disputed area is complete and plaintiff has none.

In considering the question of a prescriptive title by adverse possession it is necessary to go back to a time twenty years before the commencement of these actions.* Joseph Lewis was then the record owner of the disputed tract; and Pauline Collins was the predecessor in interest of the plaintiff. Her two children are the only witnesses who testified as to conditions then existing, and their testimony, stripped of conclusions, falls short of showing any

---

* See Civ. Prac. Act, §§ 34–37, as amd. by Laws of 1932, chaps. 261–264.

adverse possession. In the first place, the disputed land was not cultivated or improved or protected by inclosure. (See Civ. Prac. Act, § 38.) Moreover, there is no evidence of an adverse user. Mrs. Collins planted an orchard and some of the trees were over the line on the Lewis property. The line was not marked. No fruit was taken from the trees by Mrs. Collins. The trees were too young. Cows grazed not only on the disputed land but "all along the river." The witnesses as children played "all along the river." Such is the testimony. The land was uninclosed, open and exposed, and was used in common with other land so far as any use was made thereof. While there is evidence of cutting grass and perhaps raising vegetables by Mrs. Collins, it does not appear that this occurred on the disputed land. Drift wood was taken from the river apparently where convenient. There was a spring used by both families. No objection was made by Joseph Lewis. The two families were good friends and good neighbors. So the witnesses testified. They do not testify to having heard any conversation with Mr. Lewis concerning the title to this land in question. The witness Palmer, who was the successor in interest of Mrs. Collins, testified that the first question as to ownership occurred in the year 1921, and the parties then had a survey made and Mr. Lewis built a fence according to a line fixed by that survey. Palmer further testified as follows: "Mr. Joseph Lewis agreed that our cows were to graze wherever they liked until the dispute came up about the line. * * * Q. In other words you had an understanding that your cows went up to this land and his cows went down to your land. A. Yes." That was in the year 1921, and fairly represents the attitude of the parties prior to that date. The parties were accommodating each other. Each tacitly assented to what the other did. There was nothing in the attitude of Mrs. Collins or Palmer prior to 1921 to indicate to Mr. Lewis that they were claiming any rights to the land in question. It is necessary that the acts or conversations relied on to establish adverse possession should be of such a nature and occur under such circumstances as to convey to the mind of the owner of the record title the idea that such acts were done under a claim of right. (*Hammond* v. *Zehner*, 21 N. Y. 118, at pp. 119, 120; *Belotti* v. *Bickhardt*, 228 id. 296.) In other words, there must be an attitude of hostility towards the right of the record owner. Otherwise there is nothing adverse in the user. It was said in the *Hammond* case (*supra*): "Generally, mere possession or use would not be sufficient to arrest his [the owner's] attention, or to put him on inquiry." The present case fails to show any acts or conversations prior to 1921 which would naturally arrest the attention of Joseph Lewis and

cause him to realize that any one was claiming a right or title in hostility to his own. The claim of title by adverse possession, therefore, fails.

There should be judgment in favor of the defendants in the first above-entitled action and in favor of the plaintiff in the second above-entitled action, with one bill of costs in each action to the time of the consolidation of the actions, and thereafter one bill of costs as indicated in the order of consolidation.

Attorney for Charles E. Lewis and others may prepare and submit a referee's report containing appropriate findings.